# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

Tracey Cunningham, et al.,

              Plaintiffs,     Case No. 1:16-cv-00533

v.                          Michael L. Brown
                                 United States District Judge

Fulton County, Georgia, et al.,

              Defendants.

_____/

## OPINION & ORDER

Plaintiffs are over five hundred current and former Fulton County Sheriff's Office employees, including deputy sheriffs, custodial officers, clerks, and other non-emergency administrative employees. They sued Fulton County claiming the county violated the federal Fair Labor Standards Act and breached contracts in the manner it applied credits for overtime, vacation time, holiday pay, and sick leave. Plaintiffs seek $6 million in damages, attorneys' fees, and revisions to the County's personnel policies about the accrual of these benefits. The Court grants the County's motion for summary judgment; grants the County's motion for sanctions; denies Plaintiffs' cross-motion and partial cross-motion for

summary judgment; denies Plaintiffs' cross motion for sanctions; and denies Plaintiffs' motion to certify class as moot.

## I.     Factual and Procedural Background

Fulton County has policies about holiday pay, vacation leave, sick leave, and compensatory time for employees of the Sheriff's Office.  (Dkt. 98-6   at ¶ 34 (citing Dkt. 99-34 at 9:2–10, 8:25–9:4).)   The County's policies trump any conflicting Standing Operation Procedures ("SOPs"), directives, memorandums, or orders from the Sheriff's Office.  (*Id*. at ¶ 7 (citing Dkt. 99-37 at 9:5–8).)  Plaintiffs work or worked for the Fulton County Sheriff's Office and earned holiday pay, vacation leave, sick leave, and compensatory time under these policies.  Some Plaintiffs received copies of the County's policies and procedures and the Sheriff's Office's SOPs when hired.  (*Id*. at ¶¶ 4, 20, 28.)  The County updated its policies and procedures in November 2013, December 2015, and March 2017.  (*Id*. at 35.)  Plaintiffs routinely received emails about updates to the County policies and procedures and the Sheriff's Office SOPs.  (*Id*. at ¶¶ 6, 21, 29, 35.)

In February 2016, Plaintiffs filed this action alleging that Defendants use a "rollover" provision to deprive them of pay for

accumulated overtime, vacation, holiday, and sick time. (Dkt. 35-1 at ¶¶ 33, 45, 52, 68.) Specifically, Plaintiffs allege the County unjustly enriches itself "by rolling over the employee's compensatory time, overtime, and vacation time into a category labeled sick time and then requiring the employee to forfeit all, or part of, the sick time upon leaving." (Dkt. 35-1 at ¶ 38.) Plaintiffs claim this practice violates the Fair Labor Standards Act ("FLSA") and breaches contracts. (*Id.* at ¶ 1.)

Plaintiffs first sued the Fulton County Sheriff, seven Fulton County Commissioners, and the County. (Dkt. 1.) Plaintiffs filed an amended complaint and then a second amended complaint. (Dkts. 20, 35.) The Court dismissed all claims against the individual defendants and the FLSA claims against the County, leaving only breach of contract claims against the County. (Dkts. 43, 44.)

Both the County and Plaintiffs have filed motions for summary judgment on the remaining claims. (Dkts. 97, 104.) Plaintiffs have also filed a partial cross-motion for summary judgment and a third motion to certify class. (Dkts. 54, 103.) The parties have filed cross-motions for sanctions for discovery violations. (Dkts. 95, 102, 106.)

## II.    Cross Motions for Summary Judgment

### A.    Legal Standard

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."   FED. R. CIV. P. 56(a).   "No genuine issue of material fact exists if a party has failed to 'make a showing sufficient to establish the existence of an element . . . on which that party will bear the burden of proof at trial.'"   *AFL-CIO v. City of Miami*, 637 F.3d 1178, 1186–87 (11th Cir. 2011) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).   An issue is genuine when the evidence is such that a reasonable jury could return a verdict for the nonmovant.   *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986).

The moving party bears the initial responsibility of asserting the basis for his motion.   *See Celotex Corp.*, 477 U.S. at 323.   The movant is not, however, required to negate the non-movant's claim.   Instead, the moving party may meet his burden by "'showing' — that is, pointing to the district court — that there is an absence of evidence to support the nonmoving party's case."   *Id*. at 325.   After the moving party has carried

its burden, the non-moving party must present competent evidence that there is a genuine issue for trial. *Id.* at 324.

The Court views all evidence and factual inferences in a light most favorable to the non-moving party. *See Samples v. City of Atlanta*, 846 F.2d 1328, 1330 (11th Cir. 1988). But the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Anderson*, 477 U.S. at 248. "The requirement is that there be no *genuine* issue of *material* fact." *Id.* The essential question is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson,* 477 U.S. at 251–52.

"Finally, the filing of cross-motions for summary judgment does not give rise to any presumption that no genuine issues of material fact exist." *Glenn v. Brumby*, 724 F.Supp.2d 1284, 1295 (N.D. Ga. July 2, 2010). "Rather, '[c]ross-motions must be considered separately, as each movant bears the burden of establishing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of

law.'" *Id.* (quoting *Shaw Constructors v. ICF Kaiser Eng'rs, Inc.*, 395 F.3d 533, 538–39 (5th Cir. 2004)).

## B. Discussion

The summary judgment analysis starts with consideration of the elements of the claim — here, breach of contract. "The elements for a breach of contract claim in Georgia are the (1) breach and the (2) resultant damages (3) to the party who has the right to complain about the contract being broken." *Bates v. JPMorgan Chase Bank, NA*, 768 F.3d 1126, 1130 (11th Cir. 2014) (quoting *Norton v. Budget Rent A Car Sys., Inc.,* 705 S.E.2d 305, 306 (Ga. Ct. App. 2010)). "[T]he party asserting the existence of a contract has the burden of proving its existence and its terms." *Sherman v. Dickey*, 744 S.E.2d 408, 411 (Ga. Ct. App. 2013).

In moving for summary judgment, the County argues that Plaintiffs failed to produce evidence establishing a contract that prohibits the conduct Plaintiffs allege. The County also argues Plaintiffs have failed to provide any evidence of material breach or damages. Plaintiffs counter that the County breached "the contract" between it and Plaintiffs by "violat[ing] its own policies through the scheme of comp time, rollover

and manipulations of the hours" and "tak[ing] the employee's vacation pay and convert[ing] it into the County's treasury." (Dkt. 103-1 at 16–17.)

At the outset, the parties dispute what evidence the Court should consider in deciding the summary judgment motions. The County objects to consideration of three exhibits Plaintiffs attached to their cross-motion and opposition to the County's summary judgment motion, specifically Exhibits C, D, and E. (Dkts. 103-4; 103-5; 103-6; 104 at 25–36, 38). These documents allegedly include leave accrual and pay records for three putative class members — Stephanie Barnes, William Sanders, and Margaret Ware. (*Id*.) Apparently, these are the only three plaintiffs who provided actual records of how they accrued hours, pay, or leave under the County's policies. (Dkt. 115 at 4 n.3.) The County claims Plaintiffs submitted these documents as exhibits to their cross-motion and opposition to the County's summary judgment motion without having produced them in discovery. (*Id*. at 4.)

The County says Plaintiffs violated Rules 26 and 37 of the Federal Rules of Civil Procedure. Rule 26(a)(1)(A)(ii) provides

> Except as exempted by Rule 26(a)(1)(B) or as otherwise
> stipulated or ordered by the court, a party must, without

awaiting a discovery request, provide to the other parties: a copy — or a description by category and location — of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment . . . .

Parties also must supplement their Rule 26 disclosures at appropriate intervals. *See* FED. R. CIV. P. 26(e)(1). Parties who fail to satisfy these disclosure and supplementation requirements are prohibited, under Rule 37(c)(1), from using the undisclosed evidence "at trial, at a hearing, or on a motion," unless the failure is harmless. FED. R. CIV. P. 37(c)(1); *see also Cooley v. Great S. Wood Preserving*, 138 F. App'x 149, 161 (11th Cir. 2005). The "burden rests upon the non-producing party to demonstrate that its actions were substantially justified or harmless." *United States v. Batchelor-Robjohns,* No. 03–20164–CIV, 2005 WL 1761429, at *2 (S.D. Fla. June 3, 2005); *see also Mitchell v. Ford Motor Co.*, 318 F. App'x 821, 824 (11th Cir. 2009).

During discovery, the County asked Plaintiffs to produce all the documents that putative representative Plaintiff, Adriana Christopher,[1]

---

[1] In the Notice of Filing Consents to Serve as Plaintiff Representatives and Notice of Filing Consents to Participate as Plaintiffs Under 29 U.S.C. § 216(b), Plaintiffs identify five putative class action representatives:

may offer as an exhibit at trial or in support of or opposition to any dispositive motion. (Dkt. 99-17 at 15.) At the time, Plaintiffs assured the County they had already produced any such documents. (*Id.*) The County asserts, however, that Plaintiffs did not produce "any time records, pay records, leave requests, or documents evincing accrual or usage of vacation time, sick time, or compensatory time, on behalf of any Plaintiff or putative Plaintiff during the discovery period." (Dkt. 115 at 4.) The County also argues Plaintiffs should have produced such documents in their Rule 26 disclosures. *See* FED. R. CIV. P. 26(a)(1)(A)(ii). Finally, the County claims that it was unfair for Plaintiffs to produce records for these three current or former employees after the close of discovery in response to summary judgment briefing. The County is correct.

Plaintiffs neither listed these documents as support for their damage computations in their initial disclosures under Rule 26(a) nor tried to supplement their disclosures with this information under Rule

---

Tracey Cunningham, Adriana Christopher, Cassandra Crawford, Dwayne Bowie, and Shirley Hall. (Dkt. 13 at 1.) The County addressed many of its discovery requests to these five individuals. (*See, e.g.*, Dkt. 99-17 at 3–16.)

26(e).  (*See* Dkt. 46 at 4, 10.)  Plaintiffs also produce no time, pay, or leave records or documents showing the vacation, sick, or compensatory time any Plaintiff accrued or used.  The County thus had no opportunity to depose Ms. Barnes, Mr. Sanders, Ms. Ware.  It also had no time during discovery to analyze their records or conduct additional discovery. Plaintiffs have failed to explain their failure to disclose timely this information and cannot cure their error.[2]  The documents about Mr. Sanders and Ms. Ware are dated 2015 or 2016 — showing they were available during discovery.  Under these circumstances, Plaintiffs' failure to disclose or produce this evidence was neither harmless nor substantially justified.

The Court thus sustains the County's objections to Exhibits C, D, and E to the Plaintiffs' cross-motion and opposition to the County's summary judgment motion.  (Dkts. 103-4; 103-5; 103-6; 104 at 25–36, 38.) The Court will not consider this evidence when evaluating the parties' motions for summary judgment.  *See Cooley*, 138 F. App'x at 161 (11th

---

[2] Plaintiffs filed no reply to support their cross-motion for summary judgment or to address the County's arguments about Rule 26 and 37 violations.

Cir. 2005) (per curiam) (striking undisclosed affidavits was not an abuse of discretion); *see also Johnson v. Gwinnett Cty. Sch. Dist.*, No. 1:11-cv-471, 2012 WL 5987584, at *2 (N.D. Ga. Oct. 17, 2012) (sustaining objections to affidavit and documents not produced during discovery), *adopted by*, No. 1:11-cv-471, 2012 WL 5987581 (N.D. Ga. Nov. 28, 2012).

### 1. Contract

To prevail on their breach of contract claim, Plaintiffs must show that a contract exists between themselves and the County and establish that contract's terms. *See Sherman*, 744 S.E.2d at 411. An employer's policies in place when it hires an employee can create a contract over the employee benefits provided in the policy. *See Popovich v. Bekaert Corp.*, 474 S.E.2d 286, 288 (Ga. Ct. App. 1996); *Fulton-DeKalb Hosp. Auth. v. Metzger*, 417 S.E.2d 163, 164 (Ga. Ct. App. 1992); *Superior Ins. Co. v. Browne*, 395 S.E.2d 611, 612 (Ga. Ct. App. 1990).

Plaintiffs' second amended complaint identified written County policies that they claim set forth the terms of their employment, including their rights and benefits. (Dkt. 35-1 at ¶ 18.) Plaintiffs specifically identify County policies PR-1200-2 and PR-1200-10(1), as the County's policies on compensatory time, vacation leave, sick leave,

employee separation, and holiday pay. (*Id*. at ¶¶ 20–27.) In opposing summary judgment, Plaintiffs identified a larger group of written policies governing holiday pay, vacation leave, sick leave, compensatory time, and employee separation: PR-300-12; PR-1200-2; PR-1200-3; PR-1200-10; and PR-1200-13. They claim the County breached these policies. The County does not disagree that these policies applied to Plaintiffs.

Plaintiffs also allege in the second amended complaint that the County uses "unwritten personnel policies and practices to deprive employees of compensatory time, vacation benefits, overtime pay, holiday pay and sick time earned." (*Id*. at ¶ 28.) At summary judgment, Plaintiffs produced no evidence of these allegedly unwritten policies and, in fact, did not even discuss any specific policy in their pleadings. The Court thus limits its consideration to the written policies the parties agree are relevant to this dispute.

### 2. Breach

"A breach occurs if a contracting party repudiates or renounces liability under the contract; fails to perform the engagement as specified in the contract; or does some act that renders performance impossible." *UWork.com, Inc. v. Paragon Techs., Inc.*, 740 S.E.2d 887, 893 (Ga. Ct.

App. 2013) (citations and punctuation omitted). "When a court construes contractual terms to determine if a breach has occurred, the cardinal rule of contract construction is to ascertain the intention of the parties." *Id.* (quoting *Bd. of Comm'rs of Crisp Cty. v. City Comm'rs of Cordele*, 727 S.E.2d 524, 527 (Ga. Ct. App. 2012)). If the language of a contract is plain and unambiguous, no construction is required and courts must give the terms of the contract an interpretation of ordinary significance. *See Calabro v. State Med. Educ. Bd.*, 640 S.E.2d 581, 583 (Ga. Ct. App. 2006). "[I]f the contract is ambiguous . . . courts must apply the rules of contract construction to resolve the ambiguity." *Old Republic Nat. Ins. Co. v. Panella*, 734 S.E.2d 523, 526 (Ga. Ct. App. 2012) (quoting *Holmes v. Clear Channel Outdoor, Inc.*, 644 S.E.2d 311, 313 (Ga. Ct. App. 2007)).

Plaintiffs argue that the County has breached its policies governing holiday pay, vacation leave, sick leave, and compensatory time. Upon examination, however, Plaintiffs either misunderstand or are dissatisfied with the County's policies. Plaintiffs even admit that the County has not violated any of its policies, procedures, or SOPs. (Dkts. 98-6 at ¶ 79 (citing 99-79 at 90:7–91:5 (providing no examples of times when Sheriff's office violated its written policies)); 108 at ¶ 79 (admitting the County's

statement of fact that "Plaintiffs admit the County has not violated any policies, procedures or SOPs.").)

### a) Compensatory Time

For each hour of overtime worked, Plaintiffs who are non-exempt employees earn overtime pay at 1.5 times their regular salary rates or compensatory time (that is, future time off) at 1.5 standard hours. *See* PR-300-12(1). (Dkt. 103-2 at 1.) Policy PR-300-12 provides that

> Non-exempt employees who perform overtime work which exceeds the maximum number of hours prescribed for standard work periods . . ., including work performed on County holidays or official "off-time" . . . shall be entitled to receive either overtime pay at 1.5 times the regular salary rates, or compensatory time at 1.5 standard hours for each hour worked, whichever is applicable under the Fair Labor Standards Act (FLSA). . . .
>
> . . .
>
> Employees who are allowed to accrue compensatory time shall . . . be allowed to use . . . such time . . . provided, however, that all personal (vacation) leave time taken shall be charged by such employees to their accrued compensatory time balances unless otherwise exempted by the County Manager.

(*Id*.) Non-exempt Plaintiffs can accrue a maximum of 240 standard hours of compensatory time, 400 hours for public safety employees. (*Id*.) The County pays employees for the overtime they have earned on a bi-weekly basis, provided the employees have reached (and maintain) their

maximum number of compensatory hours. (Dkt. 99-71 at 22:3–18.)

Exempt employees cannot accrue compensatory time without the county

manager's prior written approval and receive a straight rate of pay for

the compensatory hours they work. *See* PR-300-12(1). (Dkt. 103-2 at 1.)

Employees that want to take personal leave or vacation must deduct that

time from their accrued compensatory time balance. *Id*. (*See also* Dkt.

99-36 at 72:10–73:18, 90:7–14.) When an employee retires or otherwise

leaves County employment, the County pays the employee for all the

compensatory time remaining in the employees account. *See* PR-1200-

13(1). (Dkt. 99-59 at 1.)

Plaintiffs claim that the requirement that "all personal (vacation)

leave time taken shall be charged by such employees to their accrued

compensatory time balances unless otherwise exempted by the County

Manager" manipulates an employee's hours. (Dkt. 103-1 at 4.) Plaintiffs

do not explain how this occurs or how the County's actions allegedly

breach the policy. Instead, Plaintiff provides an example:

> If [an employee] takes a normal week of vacation (40 hours)
> rather than charge his accrued vacation time, [] is charged 40
> hours of comp time or 60 hours. The county claims that they
> only charge the number of hours so that it balances out.
> However, the employee had to work the 40 hours overtime,
> and then has to work an additional 40 hours overtime to make

up for the comp time taken for vacation. The employee winds up working 80 hours overtime and being paid for only 40 hours at the normal hourly rate.

(Dkt. 103-1 at 4.)[3]  Plaintiffs cited no evidence to support their claim that the County applied its policy in this way.  And the undisputed evidence establishes the contrary.

First, the policy shows otherwise.  A non-exempt employee earns 1.5 compensatory hours for each overtime hour worked under the policy. (Dkt. 103-2 at 1.)  An employee thus would only need to work 26 2/3 hours of overtime to acquire 40 hours of compensatory time for a week-long vacation.  (*See, e.g.*, Dkts. 98-6 at ¶ 69 (citing Dkt. 99-69 at 26:5–19); 108 at ¶ 69.)  Second, Kenneth Hermon, the County's Chief Human Resources Officer, explained this concept during his deposition:

Mr. Hermon: Okay. So an employee works one hour of overtime.

Plaintiff's Counsel: Yeah.

Mr. Hermon: If we were -- if our policies required us first -- to pay overtime first, we would put that one hour -- we would have paid him 1.5 -- one and a half times his salary.  But we

---

[3] Plaintiffs make similar arguments about the overtime hours that Sheriff's Office employees at the "jail" must work and vacation time and holiday pay and leave that lack merit for the same reasons explained above.  (Dkt. 103-1 at 5–6, 9, 17.)

are a comp timing employer first, so you have to earn comp time first before we pay you overtime. So that one hour of time worked is converted to one and a half hours in your comp time bank. And when you ask for time off of one hour, we reduce your comp time bank by one hour, which leaves the .5 in your comp time bank. So it's not that we are, as -- as you stated, putting 1.5 -- but when they ask for one hour of leave, and we're taking it out of their comp time bank, we're taking it out at 1.5? No. It's taken it out per hour because we have converted those hours to -- those earned hours into 1.5.

(Dkt. 100-4 at 26:22–27:15.)

In response to the County's motion for summary judgment, Plaintiffs failed to present any evidence contradicting this testimony. Plaintiffs presented no payroll records to challenge this assertion about how the County's policy works or to suggest that their hypothetical — in fact — happened to anyone. At most, Plaintiffs show that they are dissatisfied with the County's policies about over-time and compensatory pay, but dissatisfaction alone cannot support their breach of contract claim.

### b)    Holiday Pay

County policy PR-1200-10 governs Plaintiffs' holiday pay. It states

(1) Official county holidays with pay shall be designated and observed for all employees as approved by the Board of Commissioners and announced publicly . . . . "Pay status" is defined as either working on the scheduled workday or being on approved paid leave in any paid category."

. . .

> (3) Employees who may be required to work on a County holiday which falls on the employee's regular work day, may be compensated with "Holiday" time at 1.0 hour for each hour worked.

> (4) If the holiday falls on an employee's officially scheduled off day, the employee shall be granted 1.0 hour "Holiday time for each hour in the regular shift.

PR-1200-10(1), (3)–(4). (Dkts. 99-49 at 2; 103-8 at 1.) Plaintiffs assert that the County forcibly rolled over their holiday time into their sick leave balance. (Dkt. 103-1 at 6.) They also claim that, because the County caps the total sick time an employee can accrue and does not compensate employees for sick time when their employment ends, employees forfeit some amount of holiday time. (*Id.*)

The County presented evidence that it does not add holiday pay to an employee's sick leave balance. (Dkt. 100-4 at 28:14–23.) When a person leaves county employment, the County pays the employee for whatever holiday leave that person had accrued. *See* PR-1200-13(1). (Dkt. 99-59 at 1.) Mr. Hermon testified that holiday pay does not roll over into an employee's sick leave balance. (Dkt. 100-4 at 28:14–23.) Plaintiffs provided no evidence to challenge the County's evidence or

support their assertion that the County folds holiday time into sick time so that it is forfeited upon departure. (Dkts. 100-3 at 55:6–56:22 (agreeing that the Sheriff's office implemented PR-1200-10 as written); 100-5 at 55:18–56:10 (stating that the County's sick leave policy did not state that overtime, holiday time, and compensatory time were rolled over into sick time).)

Plaintiffs also contend that they receive holiday pay under this policy but are "charged against their compensatory time for the hours." (Dkt. 103-1 at 9, 12.) The policy provides that Plaintiffs may receive holiday pay (1) when they must work on a County holiday that falls on their regular work day, and (2) when a holiday falls on an employee's officially-scheduled day off. *See* PR-1200-10(3) and (4). The County counters that any employee requests for leave on a holiday outside the context of this policy are charged to the employee's compensatory time balance. (Dkt. 115 at 11.) And this is in fact what the County's holiday pay and compensatory time polices permit. (Dkt. 103-2 at 1 (providing that "Employees who are allowed to accrue compensatory time shall, upon their request, be allowed to use some or all of such time . . . provided, however, that all personal (vacation) leave time taken shall

be charged by such employees to their accrued compensatory time balances . . . .").) An employee who requests leave from work on a County holiday that falls on her regular work-day will be charged compensatory hours for the time off, but will also receive a day of holiday pay. The employee would not receive any holiday leave time under PR-1200-10(3), because the employee did not work that day. Plaintiffs failed to present any evidence that this application violates the County's policy on holiday pay or that the County violated this policy for any Plaintiff in any other way.

### c) Sick Leave

The County's sick leave policy PR-1200-3 provides that

> Eligible employees who are entitled to vacation leave as specified in PR-1200-2 shall be granted sick leave to be accrued at the rate of 3 hours and 42 minutes for each full bi-weekly pay period (3.55 for 85 hour employees, and 5.33 for 106 hour employees) of active creditable service in addition to any excess vacation time that may be credited to the sick leave balance.

PR-1200-3(1). (Dkt. 99-52 at 2.) The County does not pay employees for the accrued sick leave when they leave County employment. (Dkt. 19-69 at 19:8–12, 29:15–21.) The County's separation of leave policy, PR-1200-

13, governs compensation for employees who are no longer employed with the County's Sheriff Office. It provides that

> An employee who is dismissed, resigns, retires, is laid off, or whose appointment has expired, shall receive pay for all accrued vacation leave, compensatory leave and/or holiday leave to which he or she was entitled at the time of such separation, payable on the payday following the issuance of the final check for hours worked.

PR-1200-13(1). (Dkt. 99-59 at 2.) So while the policy requires the County to pay employees for all accrued vacation, compensatory, and holiday leave they have accrued, it does not obligate the County to compensate employees for accrued sick leave. (*Id*; s*ee also* Dkt. 62 at 69:22–70:3.) Plaintiffs have not shown that the County violates this policy.

The Court thus finds the County has not violated its policy on sick leave, PR-1200-3.

### d)   Vacation Leave Policy

Under the County's vacation leave policy, an employee can only carry a certain number of hours as vacation time. Vacation time accrued above that limit, rolls into to the employee's sick leave balance. The policy provides

> Employees occupying permanent positions shall earn and accrue vacation leave based upon active creditable service, at the rates specified below. Vacation leave may be accumulated

21

to a maximum number of standard hours, provided however,
that any accrued vacation leave in excess of that amount may
be added to earned/accrued sick leave balances.

PR-1200-2(1). (Dkt. 99-44 at 2.) An employee receives pay for all the

vacation leave she has accrued when her employment with the County

ends. *See* PR-1200-13(1). (Dkt. 99-59 at 1.) But, the County does not

pay employees for accrued sick leave. As a result, employees receive no

compensation for vacation time that rolled into sick leave. Plaintiffs

claim this practice violated the vacation policy.

Plaintiffs claim the clause stating that employees' excess vacation

leave "may be" added to employees' earned sick leave balance means

employees can chose to roll excess vacation leave into their sick leave

balances. But they claim no County policy compels employees to do so.

(Dkt. 103-1 at 5, 12.) They claim the County violates its own policies by

forcing employees "to forfeit the earned sick leave" and "taking the

vacation time without compensation to the employee." (*Id*. at 13.)

The County contends the words "may be" show that the County has

the authority to do this. It argues the policy's plain language allows the

County to rollover excess vacation time with no employee's permission.

The County thus claims Plaintiffs have presented no evidence of a breach.

The Court agrees. In Georgia, "contracts must be construed to give effect to the parties' intentions, which must whenever possible be determined from a construction of the contract as a whole." *First Data POS, Inc. v. Willis*, 546 S.E.2d 781, 784 (Ga. 2001). "Whenever the language of a contract is plain, unambiguous, and capable of only one reasonable interpretation, no construction is required or even permissible, and the contractual language used by the parties must be afforded its literal meaning." *Id*.

The vacation leave policy allows employees to accrue vacation leave at various rates. It also states, however, that employees can only accrue vacation leave "to a maximum number of hours." PR-300-12(1). (Dkt. 103-2 at 1.) They cannot continue to accrue vacation time indefinitely. The County established a policy that capped vacation leave time an employee can accrue. So what happens to the excess time? The policy states that it "may be" added into an employee's earned sick time balance. PR-1200-2(1). (Dkt. 99-4 at 2.) This makes clear that excess vacation leave time rolls into the sick leave account. That is the plain meaning of the terms when read together. Even if — as Plaintiffs claim — the provision could be read to provide employees the option of electing this

rollover or not, the effect of refusing the rollover would not be employees continuing to accrue vacation time. After all, the policy states that vacation leave can be accrued only "to a maximum number of standard hours." (*Id.*) That clause must be given effect. The result of Plaintiffs' reading of the words "may be" would simply lead to the forfeiture of vacation hours above the maximum amount. Plaintiffs thus have not established they had a contractual right to accrue vacation hours above the stated maximum. So the County's failure to pay departing employees for vacation time above the stated maximum, breaches no contract Plaintiffs have identified.

Plaintiffs have failed to carry their burden of showing that there is a genuine issue of material fact about whether the County has breached the terms of its policies on holiday pay, sick leave, vacation leave, or compensatory time.

### 3. Damages

Because Plaintiffs have failed to prove that the County breached any of the terms of its policies, or any other contract, the Court does not reach the damages issue.

## III.  Plaintiffs' Third Motion to Certify Class

Although Federal Rule of Civil Procedure 23(c)(1) requires district courts to decide class certification "as soon as practicable," courts have recognized that in some cases it may be appropriate in the interest of judicial economy to resolve a dispositive motion before ruling on class certification. *See Thornton v. Mercantile Stores Co.,* 13 F. Supp. 2d 1282, 1289 (M.D. Ala. 1998); *see also Wright v. Schock,* 742 F.2d 541, 543–44 (9th Cir.1984); *Shepherd v. Pilgrim's Pride Corp.*, No. 1:04-cv-3530, 2007 WL 781883, at *2 (N.D. Ga. Mar. 12, 2007).  This "may be appropriate where there is sufficient doubt regarding the likelihood of success on the merits of a plaintiff's claims, where inefficiency would result, or where neither plaintiffs nor members of the putative class would be prejudiced." *Shepherd*, 2007 WL 781883 at *2 (quoting *Thornton*, 13 F.Supp.2d at 1289 (citations omitted)).

Because the Court grants Fulton County's motion for summary judgment, it denies Plaintiffs' certification motion as moot.

## IV.  Sanctions

The County moved for sanctions against Plaintiffs and their counsel under Rules 30 and 37 of the Federal Rules of Civil Procedure because

two Plaintiffs failed to appear for their depositions. (Dkt. 95.) Plaintiffs say the Court should sanction the individuals but not counsel. (Dkt. 102-1 at 12.) Plaintiffs also moved for sanctions against the County for a "pattern of bad faith during discovery." (Dkts. 102-1 at 1; 106 at 1.)

## A. The County's Motion for Sanctions

### 1. Background

In April and May 2018, the County arranged to depose retiree Plaintiff February Clark. (Dkts. 95 at 5–6; 102-1 at 3). The County rescheduled her deposition once at her request, and she later refused to be deposed despite Plaintiffs' counsel having told her it was required. (Dkts. 95 at 7; 95-7 at 2; 95-8 at 2; 95-9 at 2; 95-10 at 2; 102-1 at 3.) The County had to pay a court reporter a $150 cancellation fee when she failed to appear. (Dkt. 95-11 at 2.) The County tried to schedule her deposition again but she told Plaintiffs' counsel not to call her and threatened legal action if he did. (Dkts. 95-12 at 2; 95-13 at 2; 102-1 at 4.) Plaintiffs' counsel did not try to dismiss her claims.

The parties then scheduled the deposition of Plaintiff Nattaly Lundie. (Dkts. 83; 95-15 at 2–3; 102-1 at 4.) Again, the County rescheduled her deposition at her request, but she still failed to appear.

(Dkts. 95-17 at 2; 95-18 at 2–3; 102-1 at 4–5.) Plaintiffs' counsel claims he told the County she would not appear for a deposition and offered to stipulate to that fact, but the County insisted on appearing with a court reporter. (Dkt. 102-1 at 5.) The County incurred a $300 cancellation fee. (Dkt. 95-19 at 2.) Plaintiffs' counsel explains that Lundie has not returned his phone calls or had any contact with his office. (Dkt. 102-1 at 6.) He did not try to dismiss her claims.

Plaintiffs argue that the Court should deny the County's motion for sanctions or impose sanctions on the two Plaintiffs who failed to show for their depositions. (Dkt. 102 at 1, 6.) He claims he neither planned nor condones Clark's and Lundie's conduct and should not be sanctioned. (*Id.*)

### 2. Discussion

Rule 37(d) permits a court to impose sanctions on a party for failure to appear for a properly noticed deposition. It states "[t]he court where the action is pending may, on motion, order sanctions if a party . . . fails, after being served with proper notice, to appear for that person's deposition." FED. R. CIV. P. 37(d)(1)(A)(i). The Court may require the party, the attorney, or both to pay reasonable expenses and attorneys'

fees that resulted from the failure, "unless the failure was substantially justified or other circumstances make an award of expenses unjust." FED. R. CIV. P. 37(d)(3). Rule 30(d)(2) provides that "[t]he court may impose an appropriate sanction — including the reasonable expenses and attorney's fees incurred by any party — on a person who impedes, delays, or frustrates the fair examination of the deponent." "And where 'counsel clearly should have understood his duty to the court the full range of sanctions may be marshalled . . . courts should not shrink from imposing harsh sanctions where . . . they are clearly warranted.'" *AF Holdings, LLC v. Patel*, No. 2:12-cv-262, 2015 U.S. Dist. LEXIS 93524, at *21–22 (N.D. Ga. July 8, 2015) (some alterations in original) (quoting *Cine Forty-Second St. Theatre Corp. v. Allied Artists Pictures Corp.*, 602 F.2d 1062, 1068 (2d Cir. 1979)).

Plaintiffs Lundie and Clark were properly served, yet failed to appear. Plaintiffs' counsel did not confirm they were available and cooperative before identifying them as a potential deponents, inform the County of his difficulty communicating with Lundie, try to dismiss their claims, or provide back-up deponents who could be deposed. Plaintiffs have not tried to show that their conduct was substantially justified or

that other circumstances make an award of expenses unjust. Plaintiffs' counsel merely seeks to avoid his own liability.

The Court finds that Plaintiffs Lundie's and Clark's failure to attend their depositions was not substantially justified and no circumstances make an award of expenses against them unjust. The Court orders Plaintiffs Clark and Lundie and their counsel of record, Clifford Harold Hardwick, to pay the County the reasonable expenses and attorneys' fees it incurred as a result Plaintiffs Clark's and Lundie's conduct. Clark must pay (1) the County's attorneys' fees, court reporter fees, and travel expenses for her missed deposition; and (2) one-third of the County's attorneys' fees associated with bringing this motion for sanctions. Lundie must pay the same. Clifford Harold Hardwick must pay (1) one-third of the County's attorneys' fees associated with bringing this motion for sanctions, and (2) any costs that Lundie, Clark, or both fail to pay. The Court orders Plaintiff Lundie, Plaintiff Clark, Clifford Harold Hardwick, and the County to meet and confer within thirty days of this order to agree on the appropriate costs. If the parties cannot, the County may move for specific costs.

## B.    Plaintiffs' Cross Motion for Sanctions

### 1.    Background

Plaintiffs claim the County has delayed and denied their right to discovery.  (Dkt. 102-1 at 7.)  Plaintiffs requested the County produce copies of all its "Personnel Policies relating to or governing the number of hours constitute [sic] a normal work week or work period for an employee of the Fulton County Sheriff's Department." (Dkt. 102-15 at 2.) In response, the County "produced app. [sic] 20 pages" that Plaintiffs found to be "grossly insufficient." (Dkt. 102-1 at 7.)  After the Court held a telephone conference about the parties' discovery disputes, the County produced "app. [sic] 1,200 pages of policies, 90% of which were not relevant to any requests, or to [this] case." (*Id.*)   The County supplemented its production once after the Court held another telephone conference and a second time.  (Dkts. 102-1 at 7–8; 102-16 at 1.)

Plaintiffs also assert that when they tried to depose Mr. Hermon, the County's lawyer prevented him from identifying an exhibit, reserved the objection for a Court ruling, and suspended the deposition. (Dkt. 102-1 at 8–9.)  Plaintiffs assert they could not ask Mr. Hermon their

remaining questions about the Sheriff's Office's policies and practices. (*Id*. at 10.)

The County counters that it properly completed its document production by the close of discovery. (Dkt. 105 at 6–7.) The County also asserts that it prepared two 30(b)(b) witnesses to respond to different topics — a Sheriff's Office representative to testify about its policies and procedures and Mr. Hermon (the Fulton County Chief of Human Resources) to testify about those of Fulton County. (*Id*. at 7–8.) The County claims it objected only when Plaintiffs asked Mr. Hermon questions beyond the scope for which he had been tendered. (*Id*. at 8.)

### 2. Discussion

Under Rule 37(b)(2), a court may impose sanctions "[i]f a party or a . . . witness designated under Rule 30(b)(6) . . . fails to obey an order to provide or permit discovery." FED. R. CIV. P. 37(b)(2)(A).

The County filed its answer to Plaintiffs' amended complaint on November 30, 2017. (Dkt. 52.) The discovery period thus began on December 30, 2017, and ended on June 30, 2018. *See* LR 26.2A, NDGa ("The discovery period shall commence thirty days after the appearance of the first defendant by answer to the complaint . . . .").

Plaintiffs points to documents the County produced on June 29, 2018, as part of its argument that the County did not complete its document production before the close of discovery. (Dkt. 102-1 at 8.) That date was within the discovery period. Plaintiffs' argument is meritless.

Plaintiffs assert that the County interrupted Mr. Hermon's deposition and prevented him from identifying a document about a Sheriff's Office policy. (Dkt. 102-1 at 9–10.) The County identified two witnesses in response to Plaintiffs' 30(b)(6) deposition notice:

> Defendant has determined that the following two deponents will testify to the following topics, subject to Defendant's objections: (1) Kenneth Hermon, Chief Human Resources Officer of Fulton County, will testify to Topic Nos. 1-6 and (2) Major Curtis Clark (Sheriff's Representative) will testify to Topic No. 2.

(Dkt. 86 at 7.) Topics 1–6 request testimony about the County's policies on Sheriff's Department employee compensation, vacation pay, holiday pay, sick leave, comp time, time off, and leave requests. (*Id.* at 3–7.) Topic 2 also requests testimony about the Sheriff's Office's policies on vacation pay, sick leave, and holiday pay. (*Id.* at 4.)

The County expressly provided Mr. Hermon to testify about the County's policies (including those affecting Sheriff's Office employees)

and a second witness to testify about exclusively Sheriff's Office policies. The County properly objected to Plaintiffs' question to Mr. Hermon about Sheriff's Office policies — that should have been directed to the other 30(b)(6) designee. Plaintiffs have not shown that the County or its witnesses defied any court order or prevented them from obtaining discovery. Plaintiffs' motion for sanctions is denied.

## V. Conclusion

The Court **GRANTS** Defendant Fulton County's Motion for Sanctions (Dkt. 95) and Motion for Summary Judgment (Dkt. 97). The Court **DENIES** Plaintiffs' Cross Motion for Sanctions (Dkts. 102, 106), Cross Motion for Summary Judgment (Dkts. 103, 104), and Cross Motion for Partial Summary Judgment (Dkt. 103). The Court also **DENIES AS MOOT** Plaintiff's Motion to Certify Class (Dkt. 54).

The Court **ORDERS** Plaintiff Lundie, Plaintiff Clark, Clifford Harold Hardwick, and the County to meet and confer within thirty days of this order to agree on the appropriate costs. If the parties cannot, the County may move for specific costs.

**SO ORDERED** this 29th day of March, 2019.

_____
MICHAEL L. BROWN
UNITED STATES DISTRICT JUDGE